# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| KURT HAEKER,<br><br>               Plaintiff,<br><br>   vs.<br><br>UNITED STATES<br>GOVERNMENT,<br><br>               Defendant. | CV-14-20-BLG-SPW-CSO<br><br><br>**FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

## I.    INTRODUCTION

Plaintiff Kurt Haeker ("Haeker") seeks to partition his undivided fee interest in land within Indian Allotment 3316 on the Crow Indian Reservation. *See Second Amend. Cmplt (ECF 19)*. The United States holds the legal title to the remaining undivided legal interest in trust for the benefit of several individual Indian allottees.

Pending is the United States' motion to dismiss for lack of subject matter jurisdiction. *ECF 20*. Having considered the parties' arguments and submissions, the Court makes the following findings and recommends that the motion be granted.

## II. **BACKGROUND**

Land Area 202, Tract No. 3316 ("Allotment 3316") is within the Crow Indian Reservation. *See BIA Title Status Report (ECF 21-1) at 1.* It consists of approximately 840 acres in the following three sections: (1) T4S R32E, Section 7, SE 1/4, containing approximately 160 acres in Big Horn County; (2) T6S R31E, Section 28, N1/2NE1/4 and SW1/4NE1/4, containing approximately 120 acres in Big Horn County; and (3) T3S R29E, Section 33, NE1/4, E1/2NW1/4 and S1/2, containing approximately 560 acres in Yellowstone County. *Id.*

A Bureau of Indian Affairs Title Status Report, certified on June 20, 2014, indicates that an undivided 8/9ths of Allotment 3316 is held by the United States of America in trust for eight Indian owners and that the remaining undivided 1/9th interest is owned in fee by non-Indian Esther Moser He Does It ("He Does It"). *ECF 21-1 at 2 (Appendix "A").* An uncertified and incomplete document submitted by the Haeker indicates that in 1984 the undivided 1/9th interest passed from the Estate of He Does It to her heirs, Diane Feller, Vernon Red Wolf, and Leroy Landrie. *ECF 19-1 at 3.* In 1985, the United States issued a fee simple patent to the heirs of He Does It for the undivided

1/9th interest in Allotment 3316.  *See ECF 21-4 at 10.*  This patent was issued pursuant to 25 C.F.R. § 152.6, which provides:

> Whenever the Secretary determines that trust land, or any interest therein, has been acquired through inheritance or devise by a non-Indian, or by a person of Indian descent to whom the United States owes no trust responsibility, the Secretary may issue a patent in fee for the land or interest therein to such person without application.

It appears that Yellowstone County subsequently levied taxes against that portion of the 1/9th undivided fee interest in Allotment 3316 that was in Yellowstone County.  Said taxes were not paid and subsequently, on December 9, 2013, Yellowstone County issued a tax deed for "An undivided 1/9 % interest" in lands within Allotment 3316 to Colorado Assets LLC. *Id.  See Tax Deed (ECF 21-2).*  Colorado Assets LLC subsequently conveyed a "1/9 %" undivided interest in Allotment 3316 to Haeker.  *See Quit Claim Deed (ECF 21-3).*[1]

Haeker thereafter filed this action, seeking to partition from Allotment 3316 "the NE quarter of the NE Quarter and the North Half

---

[1]Both the Tax Deed and the Quitclaim Deed purport to convey an "undivided 1/9 % interest" in this parcel, rather than the undivided 1/9th interest previously held by Esther Moser He Does it.  For purposes of this opinion, the extent of Haeker's interest does not affect the sovereign immunity issue currently before the Court.  Also, as noted by the United States (*ECF 21 at 3 n.1),* it appears that the real property description in the tax deed is not correct.

of the Southeast Quarter of the North east quarter of Section 33 Range 29 East, Township 3 south, Section 33 consisting of 60 acres[.]" *ECF 19 at 4.* The Second Amended Complaint asks the Court to "vest title [in this parcel] in the name of Kurt Haeker." *Id.*

## III.  PARTIES' ARGUMENTS

The United States presents two arguments in support of its contention that this Court lacks jurisdiction because sovereign immunity has not been waived.

First, the United States argues that the Indian lands exception to the Quiet Title Act renders it immune and deprives this Court of jurisdiction to partition Haeker's interest in Allotment 3316. *Id. at 9.* The United States contends that because it holds the legal interest in Allotment 3316 in trust for the benefit of the individual Indian allottees, its interest is protected from suit by the Indian lands exception to the Quiet Title Act. *Id. at 12.*

Second, the United States argues that Haeker has failed to establish subject matter jurisdiction because neither 28 U.S.C. § 1347 nor § 2409 provides a basis for jurisdiction over this partition action. *U.S.'s Br. Supporting Mot. to Dismiss (ECF 21) at 5.* The United States

argues that these statutes apply only if the United States is a tenant in common with the person seeking relief, and that the United States is not a tenant in common with Haeker or any of the undivided trust interest owners in Allotment 3316. *Id. at 6.* The United States contends that it "has no right to possess or use Indian trust or restricted land" and that for purposes of its administration of the trust duty owed to the individual Indian trust interest owners, the common property is treated as trust land. *Id. at 7-8.* Because no "particular segment of the actual physical land in Allotment 3316...can be identified as trust or fee[,]" the United States argues, Haeker's only remedy is to sell or lease his undivided interest, or seek partition by "negotiat[ing] with the other undivided interest owners[.]" *Id. at 8-9.*

In response, Haeker essentially argues that the determinative issue is whether the United States is a tenant in common or "simple administrator" of the lands it holds in trust for the Indian allottees. *Haeker's Opposition to Mot. to Dismiss (ECF 22) at 1.* On this point he argues that the United States is a tenant in common and therefore is the proper defendant in the pending partition action. He argues that he "would rather make a deal with the Crow beneficiaries" but federal

law prohibits an Indian from conveying an interest in lands. *Id. at 2.*
He points out that the United States has the authority to sue to quiet
title on behalf of the Indians, but chooses in this case to assert
sovereign immunity, arguing that Haeker must instead negotiate with
the Indian allottees to partition. *Id. at 4.* Haeker maintains that
subject matter jurisdiction lies and the Court should hear his case.

## IV.   LEGAL STANDARD

A cause of action must be dismissed under Rule 12(b)(1) "if the
complaint, considered in its entirety, on its face fails to allege facts
sufficient to establish subject matter jurisdiction." *In re Dynamic
Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85
(9th Cir. 2008). When considering a motion to dismiss on jurisdictional
grounds, the Court is to presume that the cause lies outside a federal
court's limited jurisdiction, and the burden of establishing the contrary
rests upon the party asserting jurisdiction – in this case, Plaintiff
Haeker. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,
377 (1994).

Unlike a motion to dismiss for failure to state a claim under Rule
12(b)(6), a Rule 12(b)(1) motion to dismiss for lack of subject matter

jurisdiction permits a court to consider "affidavits or any other evidence properly before the court," even material extrinsic to the pleadings. *Ass'n. of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). Once jurisdiction has been raised, the party opposing the motion to dismiss must "'satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *Id.* (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989)).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). This principle applies to suits involving "Indian lands the title to which the United States holds in trust." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 142 (1972). Any waiver of sovereign immunity cannot be implied, but "must be unequivocally expressed in statutory text." *Jachetta*, 653 F.3d at 903 (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Absent a waiver, sovereign immunity shields the United States from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

## V.    DISCUSSION

### A.    Jurisdiction Over Quiet Title Actions

The United States argues that the "Indian lands" exception to the Quiet Title Act, 28 U.S.C. § 2409a, renders it immune from Haeker's suit.  That statute provides in pertinent part:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights.  This section does not apply to trust or restricted Indian lands....

28 U.S.C. § 2409a(a) (emphasis added).

Because the only interest of the United States here is as trustee of allotted Indian lands, the stated exception makes clear that, to the extent that Haeker seeks to quiet title his interest in these lands, he may not name the United States as a defendant.  *See Ducheneaux v. Sec'y of the Interior of U.S.*, 837 F.2d 340, 341 (8th Cir. 1988) (holding that the district court lacked jurisdiction over a challenge to the United States' title to the trust property at issue).  Noting that the Quiet Title Act is "the only means by which adverse claimants can challenge the United States' title to real property[,]" the court in *Ducheneaux* held that "no court has jurisdiction to divest the United States of land held

in trust for Indians[.]" *Id*. at 342, 344.

But *Ducheneaux* was not a partition action – it involved a dispute over title. Here, by contrast, the parties raise no dispute over title. The present suit is not one to try title, but instead Haeker seeks only to partition his undivided interest. Thus, in the Court's view, the dispositive issue is whether there is a clear waiver of sovereign immunity over a partition action where the United States' only interest in the subject lands is as a trustee for Indian allottee owners.

## B.    Jurisdiction Over Partition Actions

Haeker's Second Amended Complaint cites 28 U.S.C. §§ 1347 and 2409 as bases for federal subject matter jurisdiction over partition actions. *Id. at 4.* The United States maintains that these sections do not waive sovereign immunity, and that this Court therefore lacks subject matter jurisdiction.

28 U.S.C. § 1347 gives district courts "original jurisdiction of any civil action commenced by any tenant in common or joint tenant for the partition of lands where the United States is one of the tenants in common or joint tenants." 28 U.S.C. § 2409 provides that partition actions involving the United States "shall proceed, and be determined,

in the same manner as would a similar action between private persons." The determinative question, then, is whether the United States is a tenant in common with Haeker by virtue of the parties' undivided interests in Allotment 3316. If the United States is properly considered a tenant in common, then 28 U.S.C. § 1347 operates as a clear waiver of sovereign immunity and Haeker may proceed with his partition action. If not, then this Court lacks subject matter jurisdiction and Haeker's suit must be dismissed.

This precise issue appears to be undecided. As the Fifth Circuit has noted, "[l]itigation based on [§§ 1347 and 2409] is rare." *Stanton v. United States*, 434 F.2d 1273, 1275 (5th Cir. 1970). The Court has found no federal case directly addressing whether 28 U.S.C. § 1347 waives sovereign immunity when a person seeks to partition an undivided fee interest from an Indian allotment, when the remaining undivided legal interest is held in trust by the United States.

The Tenth Circuit addressed a case of nearly identical facts in *Price v. United States*, 7 F.3d 968, 969 (10th Cir. 1993). There, a non-Indian holder of an undivided fee interest in an Indian allotment filed an action seeking partition and the district court dismissed the claim

based on sovereign immunity. The Tenth Circuit affirmed, finding that neither 25 U.S.C. §§ 348 nor 355 provided an unequivocal waiver of sovereign immunity. *Price*, 7 F.3d at 970. The court, however, expressly declined to discuss the applicability of 28 U.S.C. §§ 1347 and 2409 because the plaintiff did not raise these sections as potential waivers of sovereign immunity. *Id.* at 969, n. 2.

Some cases have found no waiver of sovereign immunity under these sections but those cases considered different facts from those presented here. For example, in *Rambo v. United States*, 145 F.2d 670 (5th Cir. 1944), the plaintiffs brought suit against the United States under a prior version of 28 U.S.C. § 2409. Ignoring plaintiffs' classification of their case as a partition action, and noting that they had neither possession of, nor the admitted legal title to, any interest in the lands at issue, the Fifth Circuit described the suit as:

> one <u>primarily</u> to contest with the United States its title to, and its exclusive possession of, the lands involved. It is a suit to try title with partition as an incident, to be decreed only if and when the plaintiffs succeed in establishing in them a title superior to that of the United States.

*Rambo*, 145 F.2d at 671 (emphasis added). Strictly construing the partition statute, the court held that because partition actions are not

available to try disputes as to title, subject matter jurisdiction did not

lie.  *Id.*  Other cases have reached similar results.  *See Stubbs v. United

States*, 620 F.2d 775, 783 (10th Cir. 1980) (adjudication of title to land

in which the United States holds title as Indian trust land must be

"brought and maintained within the constraints of the Quiet Title Act");

*Prater v. United States*, 612 F.2d 157, 158 on reh'g, 618 F.2d 263 (5th

Cir. 1980) (to seek partition under 28 U.S.C. § 1347, petitioner must

"clearly establish tenancy in common or joint tenancy" with the United

States); *Stanton v. United States*, 434 F.2d 1273, 1277 (5th Cir. 1970)

("[B]efore the district court has jurisdiction to entertain a suit for

partition, the plaintiff's tenancy in common must be clear and

uncontroverted").  In each of these partition actions, title to the lands in

question was disputed, requiring the courts to analyze the Quiet Title

Act.  Here, however, as noted, the parties do not dispute title.

The cases relied upon by the United States to support its position

that 28 U.S.C. §§ 1347 and 2409 do not waive sovereign immunity

appear to be distinguishable from the facts of this case.  For example,

the United States cites *Affiliated Ute* for the proposition that the

United States is not a tenant in common with Haeker.  *See ECF 21 at*

*6.* In *Affiliated Ute*, the Supreme Court held that 28 U.S.C. § 2409 did not afford a basis for jurisdiction where Indian tribal members sought distribution of their interests in a mineral estate in land to which the United States held title. But in that case there was "no dispute that the United States [held] title to the land, including the mineral interest, constituting the Uintah and Ouray Reservation." *Affiliated Ute*, 406 U.S. at 141. Because the United States held legal title to the entire parcel at issue, the Court in *Affiliated Ute* unremarkably held that 28 U.S.C. § 2409, applying only when the United States is a tenant in common, did not apply to the facts of that case. *Id.* at 143.

The United States also cites *United States v. Algoma Lumber Co*, 305 U.S. 415 (1939), arguing that because it "has no right to possess or use Indian trust or restricted land[,]" it is not a tenant in common with Haeker or the other trust interest owners. *Algoma Lumber* does not directly support this contention. That case dealt with contracts for the sale of timber on land in the Klamath Indian Reservation, executed by the Superintendent of the Klamath Indian School by authority of an Act of Congress. *Algoma Lumber*, 305 U.S. at 417. Parties to the contracts were the Superintendent, acting as an agent of the Klamath

Indians, and the Algoma Lumber Company.  The Supreme Court noted that the sale of the timber was "to be viewed as the means chosen for the exercise of the power of the government to protect the rights and beneficial ownership of the Indians."  *Id*. at 421.  The Algoma Lumber Company sued the United States for alleged overpayments pursuant to these contracts.  *Id*. at 417.

The Supreme Court held that the United States was not a party to the contract, and therefore the Court of Claims, having jurisdiction to hear and determine contract disputes with the United States, lacked subject matter jurisdiction.  *Id*. at 423-24.  Again, *Algoma Lumber* did not involve a dispute over legal title to the land in question, nor did it involve multiple ownership of the Indian lands, as is the case here.  Thus, *Algoma Lumber* does not clearly address the question whether the United States is a tenant in common with an owner of an undivided fee interest in an Indian allotment.

The United States cites *Quiver v. Deputy Assistant Sec'y – Indian Affairs (Operations)*, 13 IBIA 344, 346, 1985 WL 69179 (1985) to show that the United States is not a tenant in common with Haeker.  *ECF 21 at 6.*  In *Quiver*, an undivided interest in allotted Indian land descended

to non-Indians, who inherited the interest in fee.  No patent was issued,

and the United States held the remaining interest in trust.  The

Bureau of Indian Affairs ("BIA") leased its fractional interest in the

land, and the non-Indian owners sought an accounting and distribution

of their share of the lease payments.  The non-Indian appellees argued

that the BIA owed them a fiduciary duty to account to them for their

share of the lease revenues.  The administrative review board found

that the BIA owed no such duty, and that the appellees were not

tenants in common with the BIA, but with the other Indian owners.

*Quiver,* 13 IBIA at 352.  The review board reasoned that the "BIA has

no right to the possession or use of Indian trust or restricted land.  It

has only limited statutory and regulatory rights and duties, including

approval or disapproval of conveyances of the land by the protected

Indian owners."  *Id*. at 352-53.  Accordingly, the review board found

that the appellees must seek their accounting directly from the other

cotenants.  *Id*. at 353.

While *Quiver* does address cotenancy with a United States

agency, it dealt exclusively with beneficial interest, not legal interest.

*Quiver* found that, with respect to the beneficial interest in lease

payments derived from the land, the non-Indian fee owners were tenants in common with the other Indian owners, rather than with the BIA. But there is a distinction between a beneficial interest and a non-beneficial interest, or "bare legal title," that can be held in trust. *See Restatement (Third) of Trusts* § 42, cmt. c (2003)*; see also, e.g., Conroy v. Conroy*, 575 F.2d 175, 180 (8th Cir. 1978) (finding tribal court had jurisdiction over partition of Indian trust land in divorce proceeding between two tribal members, because partition of beneficial interests did not affect the legal title held by the United States as trustee). Thus, *Quiver* does not clearly address whether a holder of an undivided interest in fee is a tenant in common with the legal interest held by the United States.

Finally, the United States cites *Bailess v. Paukune*, 344 U.S. 171, 173 (1952) for the proposition that it "has a trust responsibility to the individual trust interest holder for the common property as a whole, no matter what percentage of the undivided interests are held in trust." *ECF 21 at 7.* But *Bailess* merely held that when an undivided interest in Indian land is devised to a non-Indian, it becomes subject to state taxes, and the non-Indian property owner cannot rely on the trust

relationship of the United States with respect to the remaining interest in the land to enjoin the state from levying and collecting property taxes. *Bailess* also held that when land is devised to a non-Indian and no patent has issued, the United States continues to hold legal title in trust, although the trust is "a dry and passive one[,]" until a patent in fee is issued. 344 U.S. at 173. Here, of course, Haeker holds a fee patent in his undivided interest in Allotment 3316.

Although these cases are thus distinguishable, the Court nonetheless concludes that these cases are instructive here. None found that the United States as trustee is a tenant in common with other owners, be they fee owners or beneficial owners. Furthermore, it is recognized in Montana and elsewhere, that tenants in common must have equal rights to possess the property. In 2 <u>Tiffany Real Property</u> § 426 (3d ed.), tenancy in common is described as follows:

> Tenancy in common is characterized by unity of possession, and it is the only unity requisite. The unity of possession means unity of right of possession and not possession in fact. Each cotenant has a right to enter upon, explore and possess the entire premises, and to do so without the consent of his cotenants, though he may not do so to the exclusion of his cotenants to do likewise.

*Id. (footnotes omitted).* Courts have similarly described "tenancy in common." *See, e.g., United States v. Craft,* 525 U.S. 274, 279-80 (2002)

("Tenants in common have many other rights in the property, including the right to use the property, to exclude third parties from it, and to receive a portion of any income produced from it"); *In re Whiting*, 311 B.R. 539, 544 (Bankr. N.D. Cal. 2004) ("It is well established that tenants in common are entitled to use and possess the entire property"); *Rodda v. Best,* 217 P.669, 673 (Mont. 1923) ("Tenants in common are equally entitled to the use, benefit, and possession of the common property and may exercise acts of ownership in regard thereto...."). Black's Law Dictionary (9th ed. 2009) defines "tenant in common" as "One of two or more tenants who hold the same land by unity of possession but by separate and distinct titles, with each person having an equal right to possess the whole property but no right of survivorship."

These well-accepted definitions of "tenants in common" do not describe the trust interest held by the United States. The trust interest is not possessory and does not entitle the United States to enjoy the benefits of property ownership, such as income produced from the land. In *United States v. Mitchell*, 445 U.S. 535, 542-43 (1980), the United States Supreme Court stated:

[The General Allotment Act, 25 U.S.C. § 331 et. seq.] indicates that the Indian allottee, and not a representative of the United States, is responsible for using the land for agricultural or grazing purposes. Furthermore, the legislative history of the Act plainly indicates that the trust Congress placed on allotted lands is of limited scope. Congress intended that, even during the period in which title to allotted land would remain in the United States, the allottee would occupy the land as a homestead for his personal use in agriculture or grazing.

*Id. (citing Mattz v. Arnett,* 412 U.S. 481, 496 (1973); 13 Cong. Rec. 3211 (1882) (Sen. Dawes) (the allottee is to be "the occupant of the land and enjoy all its use"). In *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2323-25 (2011), the Supreme Court discussed the complex Indian trust relationship, noting:

The Government, of course, is not a private trustee. Though the relevant statutes denominate the relationship between the Government and the Indians a "trust" see, e.g., 25 U.S.C. § 162a, that trust is defined and governed by statutes rather than the common law. See United States v. Navajo Nation, 537 U.S. 488, 506, 123 S.Ct. 1079, 155 L.Ed.2d 60 (2003) (Navajo I) ("[T]he analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions"). As we have recognized in prior cases, Congress may style its relations with the Indians a "trust" without assuming all the fiduciary duties of a private trustee, creating a trust relationship that is "limited" or "bare" compared to a trust relationship between private parties at common law. United States v. Mitchell, 445 U.S. 535, 542, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (Mitchell I); Mitchell II, supra, at 224, 103 S.Ct. 2961.

*United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2323, 180 L.

Ed. 2d 187 (2011)(*footnotes omitted*).  The Court is aware of no real property relationship comparable to the trust relationship between the United States and Indian owners.  Haeker cites no authority suggesting that the United States and the Indian owners are tenants in common, and there is authority suggesting to the contrary.  *See Chemah v. Fodder*, 259 F.Supp. 910 (W.D. Okla. 1966) (holding that suit by five Comanche Indian allottees to partition the allotment would be dismissed because United States was an indispensable party and had not consented to be sued).  Similarly, because the United States does not enjoy the benefits of possession and use of the land, the United States as trustee for Indian allottees cannot be held to be a tenant in common with other owners.

Mindful, as noted earlier herein, that a waiver of sovereign immunity must be clear, and that the Court is to presume that the cause lies outside federal jurisdiction unless the plaintiff has established otherwise, the Court here concludes that the United States is not a tenant in common with Haeker.  The Court is also guided by the general rule that acts of Congress relative to Indian property rights are liberally construed by the courts in favor of the Indian people.

*Montana v. Blackfeet Tribe of* Indians, 471 U.S. 759, 766 (1985
("statutes are to be construed liberally in favor of the Indians, with
ambiguous provisions interpreted to their benefit"); *Gila River Indian
Community v. United States,* 729 F.3d 1139, 1160 n.6 (9th Cir. 2013)
(noting that this general Indian canon of construction has weakened
when it conflicts with other canons such as the federalism canon).

The United States, as holder of the legal title, may be a necessary
party to a partition action.  But that fact alone does not waive the
United States' sovereign immunity.  *See State of Alaska v. Babbitt*, 38
F.3d 1068, 1077 (9th Cir. 1994) ("Congress's unambiguous retention of
sovereign immunity against quiet-title actions affecting trust and
restricted Indian lands applies without regard to the availability of
alternative means of review...Sovereign immunity may leave a party
with no forum for its claims").  Haeker has not clearly established that
this Court has jurisdiction over his partition action and thus the Motion
to Dismiss should be granted.

## V.    <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that the United
States' Motion to Dismiss *(ECF 20)* be GRANTED, and Haeker's Second

Amended Complaint be dismissed with prejudice.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of these Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the Findings and Recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 14th day of August, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge